1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VERONICA CORONA AYALA,** | **1:16-cv-0798  AWI BAM** |
| **Plaintiff,** | |
| **vs.** | **ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO F.R.C.P. 12(B)(6)** |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,** | **Doc. # 10** |
| **Defendants.** | |

        This is an action for declaratory relief in which plaintiff Veronica Corona Ayala ("Plaintiff") petitions for *de novo* review of the denial by defendants United States Citizenship and Immigration Services, et al. of her Application for Naturalization Services, et al. ("Defendants") and Request for Hearing pursuant to 8 U.S.C. §1421(c).  Currently before the court is Defendants motion titled "Motion to Dismiss for Lack of Jurisdiction" (Plaintiff's "Motion") which apparently seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Notwithstanding any confusion that might arise because of the title of Defendant's Motion, the court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to determine its jurisdiction over the merits of the case.  Venue is proper in this court.

//

//

1

2

## FACTUAL BACKGROUND

3

Plaintiff is a citizen of Mexico and a permanent legal resident of the United States and

4

has resided in the United States continuously for more than 23 years.  Defendants agree that the

5

facts pertaining to this action are as alleged in the complaint.  However, those facts are presented

6

most succinctly by Defendants in their Motion, which the court quotes here in pertinent part.

7

> [Plaintiff] obtained her LPR [Legal Permanent Resident] status as the
> result of a family filed by her then-LPR father.  ECF. No.1 ¶ 2.
> Specifically, Plaintiff's father filed an I-130 visa petition on behalf of his
> spouse, Margarita Corona Ayala, who in turn listed Veronica Corona
> Ayala as her child, thereby making her eligible for derivative
> classification.  ECF No.1 at ¶ 23.

8

9

10

> After filing the petition, Plaintiff's father was convicted of possession of
> heroin for sale and placed into removal proceedings.  ECF No.1 at ¶ 24.
> An immigration judge found Plaintiff's father removable, and though he
> appealed the decision, the appeal was dismissed for abandonment.  ECF
> No, 1-4 pg. 2.  Plaintiff's father's removal order became final in 2000, and
> his LPR status terminated at that same time.  ECF No. 1-4, pg. 2.

11

12

13

14

> Two years later, in 2002, [Plaintiff] applied for and received LPR status.
> ECF No. 1 at ¶ 25.  This grant of LPR status was erroneous, because the
> father's petition on behalf of the mother was automatically revoked prior
> to [Plaintiff's] application.  ECF No. 1-4 pg. 2. 8 C.F.R. §
> 205.1(a)(3)(i)(J).  USCIS recognized the error in 2004 and issued a Notice
> of Intent to Rescind.  ECF. No. 1-4 pg. 2.  [Plaintiff] received USCIS's
> Notice of Intent to Rescind.  ECF No. 1-4 pg. 3.  However, USCIS failed
> to follow the regulatory requirement that the matter be referred to
> immigration court for a hearing.  ECF No. 1-4, pg. 2; 8 C.F.R. § 246.3.
> The five year statutory window for rescinding [Plaintiff's] LPR status has
> now passed.  8 C.F.R. § 1256(a).  [Plaintiff] remains a lawful permanent
> resident.  ECF No. ¶ 28.

15

16

17

18

19

20

Doc. # 10 at 3:21-4:14.  Defendants assert that Plaintiff's LPR status is not challenged by this or

21

any other proceeding.

22

## JURISDICTION

23

As Defendants point out, this court has authority to conduct a *de novo* review of an

24

application for naturalization that has been denied by an immigration officer after hearing as

25

follows:

26

> c) Judicial review:  A person whose application for naturalization under
> this subchapter is denied, after a hearing before an immigration officer
> under section 1447(a) of this Title, may seek review of such denial before
> the United States district court for the district in which such person resides
> in accordance with chapter 7 of title 5. Such review shall be de novo, and

27

28

-2-

1
2

the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

3

8 U.S.C.A. § 1421 (West).

4

The title of the motion currently before the court – Motion to Dismiss for Lack of

5

Jurisdiction – is normally a signal to the court that the motion is authorized by Rule 12(b)(1) of

6

the Federal Rules of Civil Procedure.  The title of Defendant's motion is, however, a reference to

7

their substantive argument that the court may not grant the requested relief of a hearing *de novo*

8

on Plaintiff's naturalization application because Plaintiff cannot meet the statutory burden to

9

show that she was lawfully admitted for permanent residence in the United States.  Since

10

Defendant's argument is substantive in nature and since Defendants have recognized the

11

jurisdiction of this court, the court finds it has federal subject matter jurisdiction and Defendant's

12

motion to dismiss is authorized by F.R.C.P. 12(b)(6).

13

**LEGAL STANDARD**

14

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

15

can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient

16

facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530,

17

533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint

18

must set forth factual allegations sufficient "to raise a right to relief above the speculative level."

19

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court

20

considering a motion to dismiss must accept as true the allegations of the complaint in question,

21

Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the

22

pleading in the light most favorable to the party opposing the motion, and resolve factual

23

disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.

24

869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a

25

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

26

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

27

do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not

28

require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the

assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to the
> assumption of truth.  While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.  When there are well-
> pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at

1950).

## DISCUSSION

While Defendants have acknowledged that this court has jurisdiction over Plaintiff's

action, it bears noting that the cases reviewing decisions regarding citizenship status are granted

jurisdiction by statute under limited and specific circumstances.  As has been observed, "the

power to make someone a citizen of the United States has not been conferred upon the federal

courts, like mandamus or injunction, as one of their generally applicable equitable powers."

I.N.S. v. Pangilian, 486 U.S. 875, 883-884 (1988).  As Defendants in this action have

emphasized. "[a]n alien who seeks political rights as a member of this Nation can rightfully

obtain them only upon terms and conditions specified by Congress.  Courts are without authority

to sanction changes or modifications . . . ." United States v. Ginsberg, 243 U.S. 472, 425 (1917).

"Or, as we have more recently said: '"Once it has been determined that a person does not qualify

for citizenship, . . . the district court has no discretion to ignore the *defect* and grant citizenship."'

[Citation.]." Pangilinan, 486 U.S. at 884.

Defendants summarize their argument as follows:

> [Plaintiff] cannot demonstrate statutory eligibility for naturalization
> because she was not lawfully admitted for permanent residence.  The
> requirement of lawful admission is a substantive requirement that is
> freshly evaluated when an applicant applies for naturalization.  It is not

1
2
3
4
5

> dispositive that [Plaintiff] was (erroneously) granted LPR status by USCIS
> in the past.  She bears the burden of proving each of the statutory
> requirements for naturalization now, including the requirement that she
> was "lawfully admitted."  8 U.S.C. §§ 147, 1429.  In this case, she cannot
> meet that burden because there was no visa available to her at the time she
> applied for LPR status.  The visa petition filed on her behalf was
> rescinded when her father's order of removal became final, two years
> before the date of her LPR application.

6

Doc. # 10 at 5:15-25.

7

Thus argued, the pivotal contention in Defendants' argument is clear: was Plaintiff

8

lawfully admitted into the United States when she applied for, and was granted LPR status in

9

2002?  Stated another way, what was the legal effect of USCIS's grant of LPR status and its

10

subsequent failure to rescind the grant on the legality of Plaintiff's residence in the United

11

States?  The court begins its analysis by noting that "there is a presumption that public officers

12

perform their duties correctly, fairly, in good faith, and in accordance with the law and

13

governing regulations.... [Citations].  And this presumption stands unless there is 'irrefutable

14

proof to the contrary.'  [Citation].  Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 795 (Fed. Cir.

15

1993) (internal citations and quotation marks omitted).

16

Generally, matters of legal status – matters such as marriage, peace officer status or

17

citizenship – are legal constructs that become facts because the authority vested with the

18

statutory power to establish the status does so.  To say that a status, such as marriage or

19

citizenship, has a substantive component is to beg the question of who has the legal authority to

20

declare the substantive requirements fulfilled and who has authority to declare that a requirement

21

is not fulfilled.  To illustrate, a couple is married in a particular state because an individual

22

vested to declare them married does so according to law.  Subsequently, the status of marriage

23

that was established in the first instance by a person authorized to do so can only be undone by

24

legally sanctioned due process.  There is no authority that can declare the couple not married

25

based on some alleged mistake in the conferring of that status unless a proceeding sanctioned by

26

law is employed.

27

As the court understands Defendants' argument, at the time of the events at issue in this

28

action USCIS had the sole authority to declare Plaintiff's citizenship or LPR status in the first

instance.  By extension of the foregoing reasoning USCIS, having declared Plaintiff a Legal

Permanent Resident, could not reverse its own determination without legally sanctioned due

process; a fact Defendants admit by alleging that USCIS provided Plaintiff with a notice of

*Intent to Rescind* LPR status.  The fact that the document Plaintiff received announced an *intent*

*to rescind*, is evidence of Defendants' recognition that LPR status was granted in the first

instance and the grant could only be undone through established due process; in this case the

hearing required by 8 C.F.R. § 246.3.  Defendants admit that the "five-year statutory window for

*rescinding* [Plaintiff's] LPR status has now passed."  Doc. # 10 at 4:13-14.

To advance their argument that there exists a "substantive" requirement for legal

permanent residence that is separate and apart from the designation of LPR status by USCIS,

Defendants rely on <u>In re Koloamatangi</u>, 23 I. & N. Dec. 548 (2003).  <u>In re Koloamatangi</u> is a

decision by the Board of Immigration Appeals holding that the five-year limitations period to

rescind LPR status did not render the appellant non-deportable where the original grant of LPR

status was the result of a fraudulent misrepresentation.  Although, Defendants correctly observe

that <u>Koloamatangi</u> and cases that have relied upon it have involved instances of grants of LPR

status by means of fraud, Defendants rely the case for the more general proposition that LPR

status may be considered to not have conferred legal permanent resident status where there was

an "error" in the granting of the status in the first instance.  Defendants cite this sentence from

<u>Koloamatangi</u> as establishing that proposition: "'The term "lawfully admitted for permanent

residence" does not apply to aliens who had obtained their permanent residence by fraud, **or had**

**otherwise not been entitled to it**.'"  Doc. # 10 at 6:20-22 (quoting <u>Koloamatangi,</u> 23 I. & N. at

550) (emphasis supplied by Defendants).

Defendants contend that the phrase "or had otherwise not been entitled to it" expands the

holding in <u>Koloamatangi</u>  to cases involving grants of LPR status as a result of mere error.

Defendants contend, based on the decision in <u>Koloamatangi</u> that both in the case of an erroneous

grant of LPR status and in the case of grant of LPR status by fraud, the grant of LPR status is

void *ab initio*.  <u>See</u> Doc. # 10 at 8:11-15 (an alien is determined never to have obtained LPR

status once his original ineligibility is determined in subsequent proceedings"). Defendants have provided no authority for the application of <u>Koloamatangi</u> to errors by immigration authorities not involving fraud. The court recognizes that authority on this issue is sparse, however in at least one case the Ninth Circuit has clearly held that the reasoning found in <u>Koloamatangi</u> cannot be applied outside the context of fraud. <u>See</u> <u>Cardenas-Mendoza v. Holder</u>, 320 F. App'x 525, 527 (9th Cir. 2009), as amended on denial of reh'g (June 3, 2009) ("BIA's reliance on <u>Matter of Koloamatangi</u>, 23 I. & N. Dec. 548 (BIA 2003), was misplaced [in this case], as there is no basis in the record for finding that Cardenas-Mendoza obtained his permanent resident status through fraud or misrepresentation").

Based on the authority and arguments presented by Defendants in their motion to dismiss, the court finds that Defendants have failed to show that Plaintiff did not become a legal permanent resident when she was granted LPR status by Defendants in 2002. In doing so, the court gives full force and effect to the actions of USCIS who had sole initial authority to grant that status and who declined to rescind what had been granted in accordance with required due process within the time specified by statute. The court notes that fraud, which normally and in this particular circumstance would toll any statute of limitations, is not present in this case. The court further finds that equitable doctrines such as waiver or estoppel are not at issue in this case. In holding that Plaintiff cannot meet the requirement for naturalization that she was lawfully admitted for permanent residence, Defendants have simply failed to accord to USCIS the presumption of its authority to grant LPR status in the first instance. The court finds Defendants have failed to overcome the legally mandated presumption that when USCIS granted Plaintiff LPR status in the first instance and then declined, either purposefully or erroneously, to pursue the legally required process for *rescinding* the status that had been granted, they acted within their lawful authority. The court concludes that Defendants have failed to provide persuasive authority for the proposition that, absent a fraudulent application, the grant by USCIS of LPR status is not by itself conclusive of the question of the "legality" of a person's permanent residence in the United States for all purposes. Simply put, this court concludes that USCIS's

grant of LPR status to Plaintiff establishes the legal "fact" of her lawful status as a permanent resident.  Having failed to *rescind* Plaintiff's legal status within the statutory time period, and there being no basis for tolling of the statutory period, Defendants and this court must give effect to that initial grant.[1]  Defendants' motion to dismiss will therefore be denied.

THEREFORE, for the reasons discussed above, Defendants' motion to dismiss is hereby DENIED.

IT IS SO ORDERED.

Dated:    October 19, 2016            _____

SENIOR  DISTRICT  JUDGE

---

[1]    The court understands that it has reached this conclusion by way of reasoned analogy and not by means of reference to authoritative case law.  The court is therefore mindful that Defendants may reasonably wish to seek appellate review before this action proceeds to its conclusion in this court.  The court will therefore give consideration to any motion for interlocutory appeal.