# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VERONICA CORONA AYALA,** <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al*.,** <br><br> **Defendants.** | **CASE NO. 1:16-CV-0798 AWI BAM** <br><br> **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> (Doc. No. 23) |

This is an action for declaratory relief in which Plaintiff Veronica Corona Ayala ("Ayala") petitions for *de novo* review of the denial by Defendants United States Citizenship and Immigration Services ("USCIS") *et al.* ("Defendants") of her Application for Naturalization Services and Request for Hearing pursuant to 8 U.S.C. § 1421(c). Currently before the Court is Defendants' Motion for Summary Judgment ("Motion"). For the reasons that follow, Defendants' Motion will be granted.

# **LEGAL FRAMEWORK**

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets

forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable. See Narayan, 616 F.3d at 899. Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

## FACTUAL BACKGROUND[1]

*1. Undisputed Facts*

Ayala is the holder of a green card who seeks to naturalize. JSUF 1. Ayala obtained her lawful permanent resident ("LPR") status as the result of a family petition filed by her then-LPR father. JSUF 2. Specifically, Ayala's father filed an I-130 visa petition on behalf of his spouse, Margarita Corona Ayala, who in turn listed Ayala as her child, thereby making Ayala eligible for derivative classification. JSUF 2. The Department of State allocated to Ayala an immigrant visa number under 8 U.S.C. § 1153(a)(2) and (d), as the child or a beneficiary of a form I-130 filed by an LPR. Approval of the form I-130 was essential to Ayala's eligibility. JSUF 3.

After filing the petition, Ayala's father was convicted of possession of heroin for sale and placed in removal proceedings. JSUF 4. An immigration judge found Ayala's father removable, and though he appealed the decision, the appeal was dismissed for abandonment. JSUF 5. Ayala's father's removal order became final in 2000, and his LPR status terminated at that same time. JSUF 6.

---
[1] "JSUF" refers to the parties' Joint Statement of Undisputed Facts, filed by Defendants.

3

Two years later, in 2002, Ayala applied for and received LPR status. JSUF 7. This grant of LPR status was based on an error by USCIS, because the father's petition on behalf of the mother was automatically revoked prior to Ayala's application. JSUF 8. When her father's LPR status terminated, the form I-130 he had filed was also revoked by operation of law. JSUF 8. An additional error by USCIS in granting Ayala's LPR application was in the I-864 Affidavit of Support filed by her father. JSUF 9. Because he was no longer in valid LPR status himself, he no longer met the criteria for filing an affidavit of support for a family-based petition. JSUF 9.

In 2004, USCIS recognized the error in granting Ayala's LPR application and issued a Notice of Intent to Rescind ("Notice"). JSUF 10. Ayala received USCIS's Notice and responded. JSUF 10. However, USCIS did not then refer Ayala to an immigration judge for a hearing as required by 8 C.F.R. § 246.3. JSUF 10. The five-year statutory window for rescinding Ayala's LPR status has now passed. JSUF 10. Ayala remains a lawful permanent resident. JSUF 10. USCIS is not challenging Ayala's LPR status in any forum. JSUF 10.

In 2015, Ayala applied for naturalization. JSUF 11. USCIS denied the application that same year, stating its position that the requirement of having been lawfully admitted for permanent residence has not been met. JSUF 11. Ayala filed an administrative appeal, and USCIS issued a written decision. JSUF 12. USCIS affirmed its decision that because Ayala was not lawfully admitted for permanent residence, she is ineligible for naturalization. JSUF 12.

*2. Procedural Background*

On June 9, 2016, Ayala filed a petition for *de novo* review on the denial of her application for naturalization and request for a hearing. Doc. No. 1. Thereafter, Defendants filed a motion to dismiss pursuant to F.R.C.P. 12(B)(6). Doc. No. 10. On October 19, 2016, this Court denied Defendants' motion to dismiss. Doc. No. 16. On April 25, 2017, Defendants filed the pending motion for summary judgment. Doc. No. 23. After full briefing, the Court allowed the parties to each file a sur-reply. Doc. No. 27.

**DEFENDANTS' MOTION**

*Defendants' Argument*

Defendants argue that Ayala's petition fails as a matter of law because she was not lawfully admitted for permanent residency – a statutory requirement for naturalization. While Defendants concede that Ayala currently has LPR status, Defendants point out that Ayala only has her LPR status due to a mistake on the government's part. Defendants acknowledge that there was no fraud on Ayala's part in obtaining her LPR status, but argue that based on the applicable statutes and available case law, Ayala cannot meet her burden of proving that she is eligible to naturalize. While the government's mistake was to Ayala's benefit, and she retains LPR status to this day, Defendants argue that she cannot rely on the government's mistake to obtain the additional and distinct benefit of naturalization.

*Plaintiff's Opposition*

Ayala argues that since Defendants failed to rescind her LPR status, she is in fact "lawfully admitted" having now been an LPR for more than ten years after the expiration of the statutory rescission period. Ayala emphasizes that the law defines "Lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws," citing 8 U.S.C. § 1101(a)(20). Ayala argues that Defendants failed to perform their duties in accordance with the law, and this should not bar her from naturalization. Ayala stresses that she never made a material misrepresentation nor did she ever commit fraud to obtain her LPR status, which she has held since 2002. Ayala argues that Defendants' actions or omissions have denied her equal treatment under the law and penalized and discriminated against her.

**LEGAL ANALYSIS**

*1. The Applicant Bears the Burden of Proof*

It is the applicant's burden to prove that he or she entered the United States lawfully and is eligible to become a U.S. Citizen. "[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated

that doubts 'should be resolved in favor of the United States and against the claimant.'" Berenyi v. Dist. Dir., Immigration & Naturalization Serv., 385 U.S. 630, 637 (1967) (citation omitted); see also 8 U.S.C.A. § 1429 ("The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States . . . ."); I.N.S. v. Pangilinan, 486 U.S. 875, 876 (1988) ("It is well settled that the burden is on the alien applicant to establish his eligibility for citizenship.")

*2. Statutory Requirements for Naturalization*

The requirements for naturalization are set forth in 8 U.S.C.A. § 1427, which in pertinent part states:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, *after being lawfully admitted for permanent residence*, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C.A. § 1427(a) (emphasis added). This statute's key phrase is further defined by 8 U.S.C.A. § 1101(a)(20), which states that "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Id.

*3. Whether Ayala is "Lawfully Admitted for Permanent Residence"*

Based on the parties' Joint Statement of Undisputed Facts, there is no issue of disputed material fact and Defendants' motion for summary judgment is purely a question of law. It is undisputed in this case that Ayala is an LPR of the United States. It is also undisputed that Ayala's LPR status is the result of a mistake on the part of Defendants, and that the time for Defendants to rescind Ayala's LPR status has now passed. There is no argument in this case that Ayala committed any type of fraud in gaining LPR status. Thus this Court is faced with the legal

question of whether Ayala, as an LPR, is not "lawfully admitted for permanent residence" such that she is ineligible to naturalize.

### a. *"Lawfully Admitted for Permanent Residence" in the Removal Context*

While there is no Ninth Circuit decision addressing whether an LPR is "lawfully admitted for permanent residence" under the definition provided in 8 U.S.C.A. § 1101(a)(20) in the naturalization context, the Ninth Circuit and the Board of Immigration Appeals ("Board") have addressed the same statutory definition in the removal context. The Ninth Circuit and the Board have made it clear that "lawfully admitted for permanent residence" is not merely a procedural requirement, but a substantive one.[2] In *Monet v. I.N.S.*, 791 F.2d 752 (9th Cir. 1986), a removal case, the Ninth Circuit agreed that the term "lawfully admitted" requires compliance with substantive legal requirements. "Admission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity." Id. at 753 (citing In re Longstaff, 716 F.2d 1439, 1441 (5th Cir.1983)). In *In re Koloamatangi*, 23 I. & N. Dec. 548, 551 (BIA 2003)[3], a removal case, the Board found that "the correct interpretation of the term 'lawfully admitted for permanent residence' is that an alien is deemed, *ab initio*, never to have obtained lawful permanent resident status once his original ineligibility therefor is determined in proceedings." The Board phrased its findings broadly based on Circuit precedent, explaining that "the United States Courts of Appeals for the Fifth and Ninth Circuits each decided that the term 'lawfully admitted for permanent residence' did not apply to

---

[2] While Ayala cites to *Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010) to argue that the term "previously admitted" in Section 1182(h) referred to a procedurally regular admission and not a substantively lawful admission, this case is inapplicable here. 8 U.S.C. § 1182(h) offers the possibility of a waiver of inadmissibility to otherwise inadmissible aliens, but not to aliens who have "previously been admitted to the United States as an alien lawfully admitted for permanent residence" and later convicted of an aggravated felony. Id. Lawful admission in such a context triggers a penalty – the alien is no longer eligible to apply for the waiver. Hing Sum, 602 F.3d at 1093. Not only is the statutory language in *Hing Sum* ("previously admitted") different than the statutory language at issue in this case ("lawfully admitted for permanent residence"), but *Hing Sum* was decided in the context that the mere fact of previous admission was enough to trigger the immigration penalty.

[3] This Court previously questioned *In re Koloamatangi's* application to a case outside the context of fraud in its order denying Defendants' motion to dismiss. Doc. No. 16. However, after further briefing and research, and in light of Ninth Circuit precedent in the removal context interpreting *In re Koloamatangi*, the Court finds that this case applies. See, e.g., Shin v. Holder, 607 F.3d 1213, 1216 (9th Cir. 2010) ("Although the facts of both *Monet* and *Koloamatangi* involve acts of personal fraud or misrepresentation, their holdings broadly deem all grants of LPR status that were not in substantive compliance with the immigration laws to be void *ab initio*.")

7

aliens who had obtained their permanent resident status by fraud, *or had otherwise not been entitled to it*." Id. (emphasis added); see also Segura v. Holder, 605 F.3d 1063, 1067 (9th Cir. 2010) (emphasizing "the necessity of actually complying with the substantive elements of the admission requirements"); Shin v. Holder, 607 F.3d 1213, 1216–17 (9th Cir. 2010) (citing to *Monet* for the principle that "the term 'lawfully' denotes compliance with substantive legal requirements" and holding that "[u]nder *Monet* and *Koloamatangi*, Lee was never 'lawfully admitted' for permanent residence and thus the Shins' derivative visas were improperly granted.").

Even if the plaintiff obtained her LPR status by the government's mistake, and no fraud was involved, the plaintiff is still not "lawfully admitted for permanent residence." In *Segura*, the petitioner argued that the Ninth Circuit's decision in *Monet* was inapplicable to him because he did not obtain his LPR status through fraud. Segura, 605 F.3d at 1067. The Ninth Circuit disagreed. "We do not read our opinion in *Monet* so narrowly. Although the facts of *Monet* indicate that the alien there did conceal his prior conviction . . . nothing in our discussion of the alien's eligibility for relief turned on the act of concealment. Rather, we emphasized the necessity of actually complying with the substantive elements of the admission requirements." Id. In conclusion, the Ninth Circuit held that "[petitioner] was ineligible for permanent resident status at the time he filed his application for an adjustment of status. Therefore he was never 'lawfully admitted for permanent residence' as required by § 212(c), notwithstanding any mistake by immigration officials in granting [petitioner] permanent resident status." Id. (citation omitted); see also Shin, 607 F.3d at 1216 ("Although the facts of both *Monet* and *Koloamatangi* involve acts of personal fraud or misrepresentation, their holdings broadly deem all grants of LPR status that were not in substantive compliance with the immigration laws to be void *ab initio*.")

### b. *Application of Removal Cases to Naturalization Cases*

Since the relevant statutory definition of "lawfully admitted for permanent residence," found in 8 U.S.C.A. § 1101(a)(20), is the same in both the removal context and the naturalization context, this Court will apply the Ninth Circuit's interpretation of the statute from removal cases. This is consistent with the approach taken by other district courts within the Ninth Circuit. See Bertos v. Napolitano, 2013 WL 1435480, at *5 (N.D. Cal. Apr. 9, 2013) (in a case where Plaintiff,

who was granted LPR status due to error sought naturalization, the court concluded that the Ninth Circuit and the Board's interpretation of "lawfully admitted for permanent residence" in the context of waiver or cancellation of deportation proceedings applies equally to naturalization, and granted Defendants' motion to dismiss Plaintiff's petition); Zuniga v. Holder, 2012 WL 4215859, at *4 (N.D. Cal. Sept.14, 2012) (reaching the same conclusion in the context of naturalization on the basis that "Zuniga does not explain why the Court should interpret [lawfully admitted] differently for the purposes of two different sections of the same statute."). Moreover, this approach is consistent with other circuits who have examined the issue. See, e.g., Turfah v. United States Citizenship & Immigration Servs., 845 F.3d 668, 672–73 (6th Cir. 2017) (In a naturalization case where the plaintiff was granted LPR status by mistake, the court adopted the Board's holding "that an alien is 'lawfully admitted' only if the alien meets all of the substantive requirements for LPR status in the immigration laws . . . Because the statute is ambiguous, we must defer to the [Board's] interpretation of the statute in *Koloamatangi* so long as that interpretation is deemed reasonable."); Saliba v. Attorney Gen. of United States, 828 F.3d 182, 196 (3d Cir. 2016) (holding that "an alien who becomes a LPR despite being 'inadmissible' has not been 'lawfully admitted' for permanent residence" for the purpose of naturalization); Injeti v. U.S. Citizenship & Immigration Servs., 737 F.3d 311, 318 (4th Cir. 2013) ("[W]e find that Injeti failed to show that she was 'legally entitled' to the grant of LPR status she received, and conclude that she was not lawfully admitted for permanent residence. Injeti is therefore ineligible for naturalization . . . .").

    *c.* Agarwal *is Not Persuasive*

Ayala heavily relies on *Agarwal v. Napolitano*, 663 F. Supp. 2d 528 (W.D. Tex. 2009), in which the court rejected the argument that Plaintiffs' LPR status was void *ab initio* because the government issued the LPR status erroneously. Id. at 536-37. The court stated that "The law plainly states that, once granted, LPR status sticks; if the CIS later realizes that the alien was actually ineligible for that adjustment in status at the time of granting (*i.e.* it was granted erroneously) then it must follow the formal procedure for revocation or rescission." Id. at 539. The court went on to reason that this "strongly suggests that there is only one way to set aside a

9

grant, even an erroneous grant, of LPR status—a formal rescission proceeding. Simply ignoring LPR status after it is granted, as the CIS did in its decisions on the Agarwals' applications, and as the agency urges this Court to do here, is inappropriate." Id. The court held that Plaintiffs were not rendered ineligible for citizenship despite their erroneous LPR status. Id. at 543.

The Court respectfully declines to follow *Agarwal* for the following several reasons; First, the holding in *Agarwal* that the plaintiffs were not rendered ineligible for citizenship even though their LPR status was issued in error is inconsistent with the Court's analysis of Ninth Circuit case law and *Bertos*, 2013 WL 1435480, as cited above. Second, *Agarwal* appears to be an outlier as no other court has followed *Agarwal* for this holding. Third, two district courts have expressly declined to follow *Agarwal* in naturalization cases. See Turfah v. United States Citizenship & Immigration Servs., 2016 WL 362456, at *3 (E.D. Mich. Jan. 29, 2016), aff'd, 845 F.3d 668 (6th Cir. 2017) ("[T]he Court rejects the finding [in *Agarwal*] that tension exists between admitting that an individual was granted LPR status and challenging the lawfulness of that admission. There is nothing inconsistent between the government's position that Petitioner was mistakenly granted LPR status and its position that Petitioner was not lawfully admitted to the United States."); Bertos, 2013 WL 1435480, at *6 (distinguishing *Agarwal* in part because the Agarwals' defective LPR status was due to the government's unlawful actions in failing to notify the Agarwals of an enhanced fee requirement, which the Agarwals could have remedied, unlike Bertos, who could not have remedied her defective application).

### d. Ayala's Additional Arguments

Ayala makes two additional noteworthy arguments that the Court will address. Ayala argues that the denial of naturalization is discriminatory and that Defendants failed to perform their duties in accordance with the law. The Court construes this as an attempt to invoke the Court's equitable powers or to apply estoppel. However, the Court cannot invoke its equitable powers to circumvent the requirements of the United States immigration laws or apply estoppel where the statutory requirements for naturalization have not been satisfied. See INS v. Pangilinan, 486 U.S. 875, 883–84 (1988) ("[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers ... does a court have the power to confer citizenship in violation of

10

[the Immigration and Nationality Act's ("INA")] limitations"); Mustanich v. Mukasey, 518 F.3d 1084, 1085 (9th Cir. 2008) ("[*Pangilinan*] established that citizenship cannot be conferred by estoppel where the statutory requirements for naturalization have not been satisfied.") The Supreme Court has held that 8 U.S.C. § 1421(d) provides that a person may not be naturalized by any means other than those specified in the INA, thus federal courts do not have the power to confer citizenship by equitable means. Pangilinan, 486 U.S. at 883–84. The INA and applicable case law foreclose Ayala's apparent suggestion that this Court should act in her case on principles of equity or estoppel.

Further, it makes no difference here that Ayala has already passed the five year rescission period for her LPR status. In *Bertos*, the applicable LPR rescission period had expired, and plaintiff argued that "because her status is irrevocable, she has necessarily been 'lawfully admitted' for the purposes of naturalization." Bertos, 2013 WL 1435480, at *3. The district court rejected this argument, explaining that "Bertos must establish substantive compliance with the INA's requirements for LPR status 'in every respect' to naturalize, and the five year statute of limitations on rescission of LPR status does not help her." Id. at *5. The court went on to further explain that "[w]hile Bertos's LPR status remains unassailable in a rescission proceeding based on the statute of limitations . . . the five year statute of limitations cannot cure Bertos's unlawful LPR status for the purposes of naturalization." Id. Similarly, other circuits have reached the same conclusion as *Bertos*. See Turfah, 845 F.3d at 675 ("[W]e are unpersuaded by Turfah's argument that he must be considered lawfully admitted because his LPR status 'vested' when the five-year statute of limitations ran, preventing the government from rescinding the same. But, the language of 8 U.S.C. § 1256(a) applies to the rescission of LPR status, not to naturalization proceedings. Furthermore, the running of the statute of limitations simply means that the government cannot institute rescission proceedings against Turfah, not that Turfah's entry was lawful in the first place.") (citation omitted); Koszelnik v. Sec'y of Dep't of Homeland Sec., 828 F.3d 175, 181 (3d Cir. 2016) (rejecting an alien's argument that he was lawfully admitted because the statute of limitations for rescinding his LPR status had run). Therefore, the rescission period's expiration does not change whether Ayala is in substantive compliance with naturalization requirements.

11

*4. Resolution*[4]

It is undisputed that Ayala's LPR status was issued in error and therefore this Court finds that she does not meet the substantive requirements of being "lawfully admitted" for the purpose of naturalization. Ayala obtained LPR status as the result of a family petition filed by her then-LPR father. JSUF 2. After filing the petition, Ayala's father was convicted of possession of heroin for sale and his LPR status terminated. JSUF 4-6. Two years later, Ayala applied for and received LPR status in error, because her father's petition was revoked and his affidavit of support was invalid. JSUF 7-9. The fact that the LPR rescission period has passed and that Ayala did not engage in fraud does not change the fact that Ayala's LPR status is not in substantive compliance with the law. Monet, 791 F.2d at 754; Segura, 605 F.3d at 1067; Bertos, 2013 WL 1435480, at *5. The Court concludes that Ayala is not "lawfully admitted for permanent residence" for the purpose of naturalization, and will grant Defendants' motion for summary judgment.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED;

2. Ayala's second sur-reply (Doc. No. 31) is STRICKEN; and

3. The Clerk shall enter judgment in favor of Defendants and CLOSE this case.

IT IS SO ORDERED.

Dated: July 14, 2017

_____
SENIOR DISTRICT JUDGE

---

[4] Ayala's June 13, 2017 second sur-reply (Doc. No. 31), will be stricken pursuant to the Court's May 31, 2017 order on additional briefing. Doc. No. 27. After permitting each party to file a sur-reply, the Court ordered that no further briefing would be permitted. Id. Ayala's second sur-reply violates this Court's order. Additionally, even if the Court were to consider Ayala's June 13, 2017 second sur-reply, it would not affect the Court's decision in this case.